Mr. Chairman of the Virgin Islands v. Gregory Turbe, Mr. Hall We almost came close to having two cases argue at the same time. Is that what happened? For a moment I thought I was on the wrong Corbett. My name is Samuel Hall. I'm the counsel of Mr. Turbe. I'd like to reserve three minutes for rebuttal. That request will be granted. The first issue that we raise on appeal is with respect to the low court's denial of the defendant's motion for a mistrial. As the transcript clearly indicates, the testimony of Sgt. DeGraff, the arresting officer, went well beyond rebutting the defendant's testimony that he asked him to contact the FBI. This matter was initially heard by the appellate division, and in its determination it found that the testimony was improper, but they did not find that a mistrial was warranted. We take issue with that. We believe that a mistrial should have been granted. Not only was the testimony improper in that it went well beyond the scope of rebutting Mr. DeGraff, but the testimony was pronounced and persistent. When you say pronounced and persistent, how many questions and answers were there? There were three questions and answers. And that's pronounced and persistent? I would submit that they are, because it seemed clear from the repetition of the phrase by both the questioner and the answering officer that there was an effort to underscore the fact that guns and two vests were found, and the phrase that keeps repeating itself is in the home of the defendant. And the prosecutor asked a proper question initially. The arresting officer responded by going beyond the scope of rebuttal and basically referred to the fact that somehow or other Mr. Turbey said he was going to contact the FBI in reference to guns and two vests in his home. And then the questioning continued, and the prosecutor used the phrase, I guess, in the house. And the answer got repeated again, the guns and the vests in the house. What was inadequate about the curative instruction? What was inadequate is that had there been perhaps one question and answer that went beyond the scope of rebutting, I think the prejudicial effect would not have been as great. But by consistently probing in the area where it should have been very clear to the prosecutor that it was beyond the scope of rebuttal, he'd gotten the answer that would have been proper, and yet he still continued. And he probed and he probed again, and the officer kept elaborating, kept tying it to, you know, in the defendant's home. And so under the circumstances, defense counsel at trial asked for the opportunity to offer ameliorating information to mitigate the harmful effect. That was denied by the court. And so the court didn't give a curative instruction, but I would submit that the prejudice was so great that it did not cure it. It would help me in trying to evaluate the potential for prejudicial impact here to know what it was that the court told the jury about Mr. Turbay's side of the case. Mr. Turbay was charged with possession of a gun without a license. And he admitted to that. He did. What he said was that he had just received it from a child who had found it, and he thought that the only appropriate thing to do was to take it from the child and give it to the police. Well, initially his thought was to put it back where the child got it from. And then when the police arrived, he intended to give it to the police and, in fact, did give it to the police. And what did the court – did the court say that's a viable defense? Did the court charge the jury on that as a defense? It was expressly raised as an affirmative defense, and I can't say precisely where it is, but I believe it was charged to the jury. And so what the effect of the Q&A did was undermine the validity of that affirmative defense. His credibility was key to his defense, that it was innocent possession, and this evidence showed that he had six guns and two bulletproof vests at home. That's correct. And I would submit that the curative instruction alone was insufficient to cure that. Mr. Hall, talk a little bit about the offense of unlawful possession of ammunition and the challenge to whether or not there was sufficient evidence to support that charge. Well, Daniel's case, I think, teaches that the lack of authority to possess ammunition is part of the government's burden to prove beyond a reasonable doubt and to prove all the elements of that offense. And in this case, I think the government did not attempt to do that, and indeed there was no mechanism for licensing – paying a license to possess ammunition. But what the government argues in its brief is that he admitted he was a convicted felon, and we take issue with that because what he does say in the record – and this is well beyond the government's case in chief – but when he took the stand, he does say that he was serving time for robbery. But it's not clear whether he's serving time for robbery as a result of a plea to a misdemeanor or something other than robbery. And so I would submit that with respect to proof of the elements of the offense beyond a reasonable doubt, that what is missing is proof that he lacked the authority to possess the ammunition. Well, is there a Virgin Islands statute that makes it unlawful for a felon to possess ammunition in the Virgin Islands? There is. I couldn't find it. What is it? I believe it's Title 14, Section 2256. 2256A? 256A, correct. Did the government make this argument before the jury that it was illegal to possess the – the terribate possessing ammunition because he was a convicted felon? No, they did not. They relied on an argument to the lower court that because he did not have a license to possess a firearm, that he therefore did not have authority to possess the ammunition. And that argument was expressly rejected in Daniels. Was this – was the argument made on appeal about the sufficiency of the evidence with respect to the ammunition count? It was made on appeal to the appellate division, although it certainly was not as – Where? How would we – where is it made in the briefings or in the record? Well, first of all, it was argued by the defense counsel in his Rule 29 motion. It was clearly argued at the trial level. Correct. No question about that. I'm asking whether the sufficiency of the evidence argument with respect to the ammunition was made to the appellate division. Well, it was argued in a manner that I have to confess is not the model of clarity, and Daniel was decided after that. It was? Yes. So is your position that whether or not it was argued to the appellate division, Daniel creates an extraordinary circumstance and we should review it? We should review the sufficiency of the evidence argument? Well, I think that the argument that was made to the appellate division was one which I think the appellate division interpreted as being one suggesting that the two offenses – It was a double jeopardy argument, right? That's correct. The lack of notice. Okay. So where's the sufficiency of the evidence argument in there? How do you find that? I guess it was a double jeopardy argument, and I think this court can consider the sufficiency argument based on the ruling in Daniel, which occurred after the appellate division ruling. Okay. So if I take your argument, it is, don't worry about whether it was argued at the appellate division. Daniel creates an exceptional circumstance, and we should review the argument for that reason. That's right. I got you? Okay. And then the last argument that we made was that the defendant was denied the effective assistance of counsel. Had his counsel filed a motion and eliminated the prejudicial information that was elicited from Sergeant DeGraff that could have been avoided, and he also failed to file a motion for a new trial. And while I appreciate the government's argument that, you know, one could say that these were strategic or tactical decisions that were made, but it seems to me hard to square the failure to file a motion and eliminate or file a motion for a new trial with either strategy or tactics. Thank you. Okay. Mr. Hall, we'll have you back on rebuttal. Thank you very much. Ms. Tepper? Good morning, Your Honor. May it please the court. I have to unfortunately point out something to the court where actually correct the counsel, which is actually in not in our favor. Judge Stapleton just asked the Virgin Islands statute regarding possession for amnesia as to a felon. And again, I need to point out to the court that it's actually Section 23, Virgin Islands Code, excuse me, Title 23, Section 456A. And again, the unfortunate part for the government is that it was passed after this case was relevant. It was passed in 2005. So in an abundance of professional responsibility, I need to point that out to the court. We appreciate your candor. So I just wanted to make the court aware of that. There is, of course, a federal statute, but it requires that the ammunition be in or affecting commerce. So you don't have a basis for that. Right. And unfortunately, Your Honors, that wasn't what this particular defendant was charged with. However, there was common law. And I think that that's really what my argument is all about, is that by virtue of his status as a convicted felon, there is nothing in the law that would allow him by law to possess ammunition. His status itself, even if you look at some of the case law where the statute says the terms unauthorized by law, that talks about whether, in fact, there is a license. In this case, it doesn't make a difference whether or not there's a licensing issue, because by virtue of his status as a convicted felon, there are absolutely no circumstances where he would be authorized by law. In fact, he goes into it himself in the testimony, where he actually admits that, in questions by his own attorney, that he was in Golden Grove Prison, he was convicted for robbery. What would happen if he were in possession of a firearm? I would go back to jail. He knew it himself. So as a result, he knew by virtue of his status that he could not possess not only a firearm, which is really not the issue here, but he also couldn't possess ammunition, which was in the gun at the time he was arrested. Now, Your Honors, let me go back to... But doesn't Daniel create a problem for you? It does in limited circumstances. The Daniel case can be distinguished. Now, one thing that I found very curious in that case is that the court did not talk about his status. In fact, I read and reread that case, and there's nowhere in that case that it says that Mr. Daniel was a convicted felon. However, you can infer by some of the charges that he probably was a convicted felon. But what the court actually says in Daniel is that the ammunition was found outside of the gun, so that was the actual conviction for Daniel. And the court also talks about the fact that the possession of the weapon that actually had the ammunition in it, he wasn't convicted for. So that leaves some room for the court to distinguish the Daniel case from this case before us. Was his sentence for unlawful possession of the ammunition consecutive or concurrent? It was concurrent. It was concurrent. Your Honors, if I may... Before we leave that point, tell me where you think, is it possible to have a successful prosecution in the Virgin Islands currently for, or was it possible at the time of this trial, for possession of, unauthorized possession of ammunition? How do you prove unauthorized after Daniel's? Your Honors, that's what I'm suggesting to the court, that the way you prove it is by his status. If he's a convicted felon, that does it in your judgment. Exactly, and if you look on page 299 of the record, the Sergeant Monason stated that they did find the ammunition within the weapon, and throughout the appendix, if you look at page 374 through 376, you have all the testimony from the defendant where he says, I possessed the gun, the ammunition was in the gun. If we have a statute passed by a legislature that says you can't possess ammunition unless you are authorized by law, and at the time no method is provided as to how you can become authorized, I mean, can't, shouldn't we say the legislature didn't mean that no one in the Virgin Islands could lawfully possess ammunition? Nobody. More likely, they said, this statute is not going to become effective until we provide some kind of licensing scheme by which somebody can get authorized. Do you think the legislature really meant to say nobody in the Virgin Islands can ever possess ammunition? The obvious answer is no, I don't think that was the intent of the legislature. However, take the statute aside for a second. Even if we look at the language, you have to take into account his status. You have to take into account that no matter what set of facts you argue, he, because he was a convicted felon, at no time could he possess either a firearm, he could not get a license. You just told me the statute that said that about ammunition wasn't passed until after this crime. Right, but that was, well exactly, that was in 2005. But what I'm suggesting now is that by virtue of his status just as a common law status that set aside what happened in 2005, the legislature at that point confirmed that yes, they needed to clean up the statute. But even given that fact, by virtue of just common law, his status provided him, his status alone did not take away his right, it would take away that information. I'm sorry, I want to make sure I understand. You're saying that under common law there was a, there's a rule that a convicted felon can't possess ammunition? Is that what you're arguing? Essentially, yes. Do you have any authority for that? Well actually, there was some recent statements actually by the U.S. Supreme Court in the recent District of Columbia v. Heller case where they talked about it in terms of firearms, that there are exceptions to the- There's statutory exceptions though, right? I mean, I'm not aware of, and I don't recall it being drawn to our attention, any case where there's a statement that as a matter of general Anglo-American common law, a person convicted of a felony can't possess ammunition. Can you point us to something on that point? What I'm going to just point you to at this point, and again, it's just in its dicta, is that the court in the District of Columbia v. Heller basically stated that, in our opinion, it should be cast doubt on the long-standing prohibition on the possession of firearms by felons. They don't go into any specifics, and it doesn't- You don't think they're talking about long-standing statutory prohibitions there? You think they're referring to some common law thing? It's difficult, I understand, it's difficult to second guess what they're saying when they don't really cite any authority. At any stage in this appeal, did Mr. Turvey raise the absence of the statute on possession of ammunition? I don't believe he did, no. Well, let me ask, you made the distinction that the ammunition was in the gun. Correct. And you're saying that that makes this case legally different from Daniel, right? From Daniel, yes, Your Honor. Okay, explain what the legal basis is for that. Is there a statute that's got language in it that we can look to that says to us, oh, the ammo's in the gun, that makes it different. That makes this case different. I understand there's a factual distinction between ammo being in a gun and not in a gun, but is there a basis in the law for us to say that that factual distinction turns into a legal difference that should make us say this case has a different outcome than Daniel? Your Honor, I'm not aware of any other cases other than the factual distinctions that I've made, both here and in my brief regarding that case. The Daniel case specifically made the distinction that since the defendant in that case was not convicted of firearm possession with the ammunition in the firearm, that apparently that's not what the court considered, and he was only convicted on the ammunition charge where the ammunition was outside of the firearm. So I can't second-guess what facts were at the time. I can only read what was in the case. Which statute are you saying was passed in 2005? Was 23 Virgin Island Code 487, was that in effect at the time of these crimes? That's the statute that says, in effect, that it's subject to forfeiture, any ammunition to a firearm worn, carried, or transported by a felon, or found in the immediate vicinity of such firearm. That's the statute I'm asking about. Was that 23 Virgin Island Code 487 in effect? Do you know at the time that this was committed? Not offhand at this point. Title 23 BIC section 456A was passed March of 2005. Anything else? Your Honor, I just wanted to respond to the defendant's issues on the pronounced and persistent questions by the prosecutor. In this case, there were only two questions. It was in rebuttal. It was in response to appropriate questions. There's 500 pages of transcript. Out of 500 pages of transcript, there were literally one-and-a-half pages that the defense is questioning the persistence and pronounced information that was detrimental to the defendant. The defendant himself, I think, created his own issues, his own credibility issues. He admitted, Your Honor, that he was a drug dealer, that he smoked marijuana, that he used the gun to commit robbery, that he was convicted for, that he was in prison at Golden Grove, that he possessed the stolen gun, he knew it was stolen, and he had no intention of turning it over to the police. I'm sorry, he said he knew it was stolen? Yes, he knew. He admitted that in the record that a young minor gave him the gun. At that point, he knew it wasn't his, let's just say it that way. This is pretty explosive. I think there were three sentences, but two or three. It was pretty explosive content in a gun possession case, wasn't it? I mean, he's saying, it's his word against the police. They say, he had this weapon here, etc., and he says, but it was completely, I had no choice about this, it was completely innocent. I found it in the hands of a minor, and I thought the thing to do was to take it away from him. It's a question of his credibility about whether he's completely innocent about guns, etc. And here this testimony comes in, and they say, they found six guns and two bulletproof vests in his home. Can instruction cure the impact of that in a gun case? Absolutely, Your Honor. If you look on page 422 of the transcript, the judge specifically went through what's appropriate in issuing a curative instruction to the jury. He completely stated to disregard it, that it wasn't supposed to be considered as part of their deliberation, and he was very specific in his curative instruction to the jury. In fact, if you look at it, the two questions really were just almost in passing. The defense counsel even got to a point where he said, I think maybe I should object to this. If the defense counsel really was that concerned, he should have objected after the second response. He allowed two more questions to be asked after the information was already out. So at this point, absolutely not pronounced, absolutely not persistent by the prosecutor's witness, and everything was done appropriately by the court in terms of its curative response. Your Honors, if there's anything, any other questions, my time is up. Thank you, Ms. Tepfer. Mr. Hall, do you have anything on your file? I have nothing. Okay, well we thank both counsels for a helpful argument. We'll take a matter under review. Thank you again for your candor. Yes, thank you very much.